1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7    JEREMY U.,

8                              Plaintiff,          NO. 2:23-CV-0096-TOR

9         v.                                       ORDER DENYING PLAINTIFF'S
                                                   MOTION FOR SUMMARY
10   MARTIN J. O'MALLEY,                           JUDGMENT
     Commissioner of the Social Security
11   Administration,

12                             Defendant.

13        BEFORE THE COURT are the parties' cross Motions for Summary

14   Judgment (ECF Nos. 10, 14).  Plaintiff is represented by David Lybert.  Defendant

15   is represented by Special Assistant United States Attorney Benjamin J. Groebner.

16   This matter was submitted for consideration without oral argument.  The Court has

17   reviewed the administrative record and the parties' completed briefing and is fully

18   informed.  For the reasons discussed below, the Court **DENIES** Plaintiff's motion.

19                              **JURISDICTION**

20        The Court has jurisdiction pursuant to 42 U.S. §§ 405(g), 1383(c)(3).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

1

## STANDARD OF REVIEW

2      A district court's review of a final decision of the Commissioner of Social

3  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4  limited: the Commissioner's decision will be disturbed "only if it is not supported

5  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6  1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7  relevant evidence that "a reasonable mind might accept as adequate to support a

8  conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9  substantial evidence equates to "more than a mere scintilla[,] but less than a

10  preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11  standard has been satisfied, a reviewing court must consider the entire record as a

12  whole rather than searching for supporting evidence in isolation.  *Id.*

13      In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

15  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16  rational interpretation, [the court] must uphold the ALJ's findings if they are

17  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

19  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

20  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that [he] is not only unable to do [his] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

1  numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

2  700 F.3d 386, 389 (9th Cir. 2012).

3  ### ALJ'S FINDINGS

4  On December 11, 2019, Plaintiff filed an application for Title XVI

5  supplemental security income benefits, alleging a disability onset date of June 1,

6  2022, which was later amended to December 11, 2019.  Tr. 28, 236-45.  Plaintiff's

7  application was denied initially, Tr. 145-47, and upon reconsideration, Tr. 153.

8  Plaintiff appeared at a telephonic hearing before an administrative law judge

9  ("ALJ") on January 26, 2022.  Tr. 60.  On February 16, 2022, the ALJ denied

10  Plaintiff's claim.  Tr. 28-41.

11  Plaintiff previously filed an application for Title XVI benefits and Title II

12  disability insurance benefits on July 12, 2012.  Tr. 6 at 83.  The ALJ in that matter

13  denied those claims on January 9, 2015.  Tr. 95.  The ALJ's decision was upheld

14  by both the Appeals Council and the United States District Court for the Eastern

15  District of Washington, thus rendering the ALJ's initial determination the final

16  decision of the Commissioner for purposes of judicial review.  Tr. 28-29, 112.

17  Because the current matter involved an unadjudicated period arising under the

18  same Title as Plaintiff's prior application, the prior final decision gave rise to a

19  presumption of continued non-disability beginning January 9, 2015.  *See Chavez v.*

20  *Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  To overcome this presumption,

Plaintiff was required to "prove 'changed circumstances' indicating a greater disability."  *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)).

The ALJ here determined that the presumption of continuing non-disability was rebutted "in a threshold sense" by the addition of some new alleged non-severe impairments and updates to the musculoskeletal and mental listings.  Tr. 29. However, because the changes did not establish any deterioration in Plaintiff's functioning, the ALJ "adopt[ed] the findings of [the prior] decision regarding severe impairments, residual functional capacity, ability to do past relevant work, and ability to do other work."  *Id.*  The ALJ also noted that Plaintiff's musculoskeletal and mental impairments would be evaluated under the current listings.  *Id.*

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in any substantial gainful activity since December 11, 2019.  Tr. 31. At step two, the ALJ adopted the following severe impairments from the prior decision: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine, with protrusion and without nerve compression; depressive disorder; and alcohol, marijuana, and methamphetamine dependence.  *Id.*  The ALJ determined that the evidence did not establish any new severe impairments.  *Id.*

Next, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed

impairment.  Tr. 35.  The ALJ then adopted the Commissioner's prior

determination that Plaintiff had the RFC to perform light work as defined by 20

C.F.R. § 416.967(b), within the following limitations:

> The claimant is able to lift and carry up to 15 pounds occasionally and up to 10 pounds frequently.  He is able to sit for up to 6 hours in an 8-hour day and for 1 hour interrupted each time.  He is able to stand/walk for up to 30 minutes at one time for a total of 4 hours in an 8-hour workday.  The claimant is able to operate foot controls occasionally with the right foot and frequently with the left foot.  The claimant needs to avoid climbing ladders, ropes, and scaffolds, but he can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  The claimant needs to avoid unprotected heights and moving mechanical parts.  The claimant can occasionally operate a motor vehicle and be exposed to vibrations.  The claimant can have frequent exposure to humidity, extreme temperatures, and fumes, dusts, gases, and other pulmonary irritants.  The claimant is able to perform simple, routine, and repetitive tasks.  He can have occasional interaction with co-workers.  He can tolerate occasional changes in the work setting.

*Id.*

At step four, consistent with the underlying opinion, the ALJ found Plaintiff

was not capable of performing past relevant work.  Tr. 39.  At step five, the ALJ

found that, considering Plaintiff's age, education, work experience, RFC, and

testimony from a vocational expert (VE), there were other jobs that existed in

significant numbers in the national economy which Plaintiff could perform,

including as a garment sorter, inspector-packer, and table worker.  Tr. 40.  These

findings were again based upon the Commissioner's order in the prior

determination.  Tr. 39.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

Based on the foregoing, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from December 11, 2019, through February 16, 2022, the date of the ALJ's decision.  Tr. 40.  On February 9, 2023, the Appeals Council denied review, making the ALJ's determination the final decision of the Commissioner for purposes of judicial review.  Tr. 11; *see* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff submits the following issues for this Court's review:

1.  Whether the ALJ properly analyzed the severity of Plaintiff's claims;

2.  Whether the ALJ properly applied principles of res judicata to Plaintiff's claims;

3.  Whether the ALJ properly discounted Plaintiff's subjective symptom testimony;

4.  Whether the ALJ impermissibly concluded Plaintiff could adjust to other work in the national economy based on his RFC and the underlying VE testimony; and

1    5.  Whether the ALJ properly evaluated Plaintiff's claims against the

2    longitudinal record.[1]

3    ECF No. 10 at 2.

4    **DISCUSSION**

5    **I.    Severity of Plaintiff's Impairments**

6    Plaintiff alleges that the ALJ erred in failing to classify multiple physical

7    and mental medical impairments as severe under step two of the sequential

8    evaluation process.  ECF No. 10 at 6-7, 14.

9    At step two, the ALJ evaluates whether any of the plaintiff's medical

10   impairments or combination of impairments is "severe."  To establish the existence

11   of a medically determinable impairment, the claimant must proffer objective

12   medical evidence thereof, meaning the abnormality "can be shown by medically

13   ─────────────

14   [1] Plaintiff states Issue 1 as a challenge to whether the ALJ properly

15   evaluated the medical evidence under 20 C.F.R. § 404.1520(c)(1) and (2), but

16   instead argues that the ALJ should have found his impairments severe.  *See* ECF

17   No. 10 at 13-14.  Accordingly, the Court has reframed the issue.  Relatedly,

18   Plaintiff did not submit Issue 3 as a discrete claim in his statement of the issues,

19   but did argue the issue in the body of his brief.  *Id.* at 2, 14.  The Court considers

20   the issue nonetheless.

acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. A

claimant's self-report of symptoms cannot be independently used to establish the

existence of an impairment. *Id.*

A medically determinable impairment is "severe" when it "significantly

limits [an individual's] physical or mental ability to do basic work activities." 20

C.F.R. § 416.920(c). However, an impairment is not severe when "medical

evidence establishes only a slight abnormality or a combination of abnormalities

which would have no more than a minimal effect on an individual's ability to

work." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3. Basic work

activities include "the abilities and aptitudes necessary to do most jobs," which

generally require: (1) physical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing,

and speaking; (3) understanding, carrying out and remembering simple

instructions; (4) using judgment; (5) responding appropriately to supervision,

coworkers and usual work situations; and (6) dealing with changes in a routine

work setting. 20 C.F.R. § 416.922.

## A.    Mental Impairments

Plaintiff contends that the ALJ misevaluated his mental impairments, which

had worsened from the time of the Commissioner's first order, as either non-

medically determinable or non-severe. ECF No. 10 at 5-6. He claims to suffer

1    from intermittent explosive anger, post-traumatic stress disorder (PTSD),

2    depression, anxiety, attention deficit hyperactivity disorder (ADHD), a traumatic

3    brain injury (TBI), possible bipolar II, possible dissociative identity, and other

4    potential antisocial personality disorders. *Id.*; *see also* ECF No. 10 at 14.

5    When analyzing the severity of a claimant's mental impairment(s), ALJs

6    apply a two-step psychiatric review technique. 20 C.F.R. § 416.920a. First, the

7    ALJ must determine whether there is a medically determinable impairment. 20

8    C.F.R. § 416.920a(b)(1). Second, if the ALJ determines that an impairment exists,

9    then the ALJ must rate the degree of functional limitation resulting from the

10    impairment according to four broad functional categories, which include the

11    claimant's ability to: (1) understand, remember, or apply information; (2) interact

12    with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage

13    oneself. 20 C.F.R. § 416.920a(c)(3). The ALJ then rates the claimant's degree of

14    impairment using a five-point scale: none, mild, moderate, marked, and extreme.

15    20 C.F.R. § 416.920a(c)(4). If the degree of limitation is "none" or "mild," the

16    ALJ will generally conclude that the impairment is not severe. 20 C.F.R. §

17    416.920a(d)(1).

18    As to the first factor, the ALJ determined that Plaintiff did not have any

19    medically determinable conversion disorder, dissociative identity disorder,

20    antisocial personality disorder, or traumatic brain injury (TBI). Tr. 33. Construing

1   Plaintiff's arguments liberally, he seems to argue that reports by Dr. Thomas

2   Genthe, Dr. Scott Alvord, and Washington State University (WSU) Psychology

3   staff establish the existence of these underlying impairments.  ECF No. 10 at 7

4   (arguing that the ALJ "fail[ed] to include mental limitations outlined by the

5   medical experts"), 8 (same).

6       The ALJ determined that Plaintiff had not established the aforementioned

7   mental defects were medically determinable impairments, because a head CT scan

8   did not establish Plaintiff suffered a TBI with subsequent neurological sequalae.

9   Tr. 33.  The ALJ also explained that Plaintiff's reported bipolar, antisocial, or other

10  dissociative identity disorders were specifically referred to as "rule-out" diagnoses

11  by the same providers that Plaintiff referenced in his opening brief.  *Id.*; *see also*

12  *id.* at 37-38 (discussing the opinions of Drs. Alvord, Genthe, and the WSU staff

13  and noting that Plaintiff's dissociative and antisocial identity disorders were rule-

14  out diagnoses).  A rule-out diagnosis "'means there is uncertainty about the

15  diagnosis and although there is evidence that the criteria for the diagnosis may be

16  met, more information is needed to rule it out.'"  *Garner v. Comm'r of Soc. Sec.*,

17  2:17-CV-00232-LRS, 2018 WL 2224061, at *3 (E.D. Wash. May 15, 2018)

18  (quoting *Burleson v. Astrue*, 3:11-cv-05063RBL-KLS, 2012 WL 195022, at *5, n.2

19  (W.D. Wash. 2012)).  Because these alleged conditions were not diagnosed, the

20  ALJ did not err in finding they were not medical impairments.

1    Likewise, the ALJ concluded Plaintiff's alleged anxiety and PTSD did not

2    qualify as medical impairments because they did not result in any additional

3    significant functional limitations beyond those considered in the underlying

4    opinion from 2015, and Plaintiff reported that he was getting better at managing

5    his symptoms.  Tr. 33.  The ALJ also acknowledged that, while Plaintiff's record

6    established Plaintiff was being treated for the conditions of anxiety and PTSD, he

7    was "cognizant of the substantial overlap in symptomology between different

8    mental impairments."  *Id.*[2]

9        The ALJ appropriately considered the medical opinions that Plaintiff

10   suggests were omitted and proffered reasons for his conclusions that were

11   bolstered by the record.  Other than suggesting that the ALJ failed to acknowledge

12   the opinions of certain providers, Plaintiff does not specifically explain how these

13   findings of non-severity were incorrect, only that he disagreed with the conclusions

14   thereof.  *See* ECF No. 10 at 14 (arguing that none of the mental impairments "were

15   found to be severe . . . despite adequate and substantial proof of their existence and

16

17       [2] The ALJ adopted the underlying order of the Commissioner classifying

18   Plaintiff's depressive disorder as a "severe" impairment.  Tr. 31.  The Court

19   therefore declines to credit Plaintiff's argument that his depressive disorder was

20   categorized as non-severe.  ECF No. 10 at 14.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

1  recurrent and prolonged treatment efforts").  Plaintiff's disagreement with a

2  rational interpretation of the evidence is not sufficient to overcome the

3  presumption that ALJ's classification of Plaintiff's mental disorders was correct.

4  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)

5  (the Commissioner's finding will be upheld "if evidence exists to support more

6  than one rational interpretation").

7       **B.   Physical Impairments**

8       Plaintiff also alleges that his fibromyalgia, chronic hip pain, chronic

9  shoulder conditions, carpal tunnel syndrome, ulnar neuropathy, irritable bowel

10 syndrome, and worsened lumbar conditions should have been found as severe

11 impairments.  ECF No. 10 at 5-6.  Again, Plaintiff identifies no specific error as to

12 the ALJ's reasoning, but merely alleges that there is "adequate and substantial

13 proof of their existence" and that "recurrent and prolonged treatment efforts" were

14 undertaken to improve his conditions.  *Id.* at 14.  The Court will not reverse the

15 interpretation of the ALJ merely because an alternative interpretation of the

16 evidence exists.  *Batson*, 359 F.3d at 1193.

17      The ALJ's findings as to the severity of Plaintiff's physical impairments are

18 supported by substantial evidence.  Tr. 31-33.  Contrary to Plaintiff's arguments,

19 the ALJ found that Plaintiff's lumbar injuries were severe.  *Id.* 31 (adopting severe

20 impairments from the ALJ's prior determination, including that Plaintiff had

1    degenerative disc disease of the lumbar spine). Regarding Plaintiff's complaints of

2    left ulnar neuropathy, the ALJ noted that the medical records contained only a few

3    complaints of pain and numbness and that Plaintiff's physical exams yielded

4    normal results. *Id.* 32. Similarly, the ALJ summarized Plaintiff's complaints of

5    bilateral shoulder pain, but noted that his pain had improved somewhat with

6    physical therapy and that manual muscle testing showed no weakness or atrophy.

7    *Id.* Likewise, Plaintiff's complaints of irritable bowel syndrome and bilateral foot

8    pain were all reported to improve with relatively conservative treatment, such as

9    physical therapy and medical prescriptions. *Id.*

10        The ALJ observed that Plaintiff underwent a left hip arthroscopy labral

11    repair and chondroplasty acetabulum for his chronic hip pain in 2017. *Id.* 32.

12    However, he noted that post-operative records established "significant"

13    improvement thereafter, including an improved gait and decreased pain in sport-

14    specific activities. *Id.* Similarly, after Plaintiff underwent a right carpal tunnel

15    syndrome surgery, he demonstrated a normal range of motion with grossly intact

16    sensation post-operation. *Id.* Accordingly, the ALJ's determination of the above

17    impairments as non-severe was supported by substantial evidence in the record.

18        The ALJ also dismissed Plaintiff's claim of fibromyalgia as a medically

19    determinable impairment, stating that it was a rule-out diagnosis because labs and

20    imaging were negative and the rheumatologist whom Plaintiff met with did not

give a diagnosis.  Tr. 33.  Plaintiff, oppositely, alleges that he was diagnosed and treated for fibromyalgia.  ECF No. 10 at 5-6.

The portions of the record which Plaintiff refers to do not support the conclusion that there was a formal diagnosis or testing performed to confirm a diagnosis.  To the contrary, providers took care to report that Plaintiff was the one who presented a history and diagnosis of fibromyalgia.  *See, e.g.*, Tr. 51 (noting that Plaintiff reported a history of fibromyalgia at an initial visit), 323 ("Per *Jeremy* he has been diagnosed with Fibromyalgia.") (emphasis added), 1018 ("44-year-old male presents for follow-up of . . . presumed fibromyalgia.").  Given the inconclusive nature of the record, it was not error for the ALJ to determine that Plaintiff's fibromyalgia was not a medically determinable impairment.  *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (internal citations omitted) ("Where medical testimony is conflicting, however, it is the ALJ's role to determine credibility and to resolve the conflict.  If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ.").

Because the ALJ's findings as to each of these alleged impairments were supported by substantial evidence in the medical record and Plaintiff does not lobby a specific challenge to that reasoning, the Court upholds the ALJ's determination that Plaintiff's various physical symptoms were either non-severe or did not qualify as medically determinable impairments.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

1      ### C.    Harmless Error

2          To the extent the ALJ committed any error in assessing Plaintiff's mental

3      and physical medically determinable impairments as non-severe, the Court finds it

4      was harmless.  A court may find harmless error at step two where the error proved

5      ultimately "inconsequential to the ultimate non-disability determination."  *Lewis v.*

6      *Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to find impairment severe at step

7      two was harmless error where ALJ considered the limitations posed by the

8      impairment at step four).  So long as the ALJ accounts for a non-severe impairment

9      in formulating the Plaintiff's RFC, any error at step two is harmless.  *See Joelle*

10     *Herrera B. v. Comm'r of Soc. Sec.*, 2:20-CV-274-RMP, 2022 WL 94903, at *6

11     (E.D. Wash. Jan. 10, 2023) (explaining that any error in formulating the RFC itself

12     was a question for a later step, and not a step two error).

13         The ALJ in Plaintiff's case stated that he "considered all of the claimant's

14     medically determinable impairments, including those that are not severe, when

15     assessing the claimant's residual functional capacity."  Tr. 31.  In the RFC, the

16     ALJ accounted for Plaintiff's alleged mental and social impairments by limiting

17     him to "simple, routine, and repetitive tasks" and his social interactions with co-

18     workers and changes to the workplace setting to "occasional."  *Id.* 35.  He further

19     accounted for Plaintiff's physical limitations by limiting the amount he could

20     carry, sit, or stand/walk without breaks and by finding that Plaintiff needed to

1    avoid moving mechanical parts. *Id.* Accordingly, any error by the ALJ in finding

2    that certain medically determinable impairments were non-severe was harmless.

3    **II.    Res Judicata**

4          Plaintiff argues that the ALJ should not have adopted the Commissioner's

5    prior determination of non-disability because there have been several changes to

6    his mental and physical health and an increase in the severity of his symptoms.

7    ECF No. 10 at 12.

8          "The principles of res judicata apply to administrative decisions, although

9    the doctrine is applied less rigidly to administrative proceedings than to judicial

10   proceedings." *Chavez*, 844 F.2d at 693 (citing *Lyle v. Sec'y of Health and Human*

11   *Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)). Under the doctrine of res judicata, a

12   prior, final determination of non-disability bars re-litigation of that claim through

13   the date of the prior decision. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).

14   In the Ninth Circuit, a prior final determination of non-disability "create[s] a

15   presumption that [the claimant] continued to be able to work after that date." *Id.*

16   (citation and internal quotation marks omitted). However, the "authority to apply

17   res judicata to the period *subsequent* to a prior determination is much more

18   limited." *Lester*, 81 F.3d at 827 (emphasis in original). "The claimant, in order to

19   overcome the presumption of continuing nondisability arising from the first

20   administrative law judge's findings of nondisability, must prove 'changed

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

circumstances' indicating a greater disability."  *Chavez*, 844 F.2d at 693 (citation

omitted).  Examples of changed circumstances include "[a]n increase in the

severity of the claimant's impairment," "a change in the claimant's age category,"

and a new issue raised by the claimant, "such as the existence of an impairment not

considered in the previous application."  *Lester*, 81 F.3d at 827-28 (citations

omitted); *see also* Acquiescence Ruling (AR) 97-4(9), 1997 WL 742758 at *3.

However, even where the claimant rebuts the presumption of continuing non-

disability by showing changed circumstances, the ALJ must continue to adopt

certain findings from the prior final order "unless there is new and material

evidence relating to such a finding or there has been a change in the law,

regulations or rulings affecting the finding or the method for arriving at the

finding."  AR 97-4(9) at *3.

   In Plaintiff's case, the ALJ found Plaintiff had rebutted *Chavez* only "in a

threshold sense" by alleging that he had new non-severe impairments and that

there had been changes to the musculoskeletal and mental listings.  Tr. 29.

However, because "no new and material evidence show[ed] a deterioration in the

claimant's functioning since the last . . . decision," the ALJ adopted the prior

order's analysis of Plaintiff's severe impairments, RFC, ability to do past relevant

work, and ability to adapt to other work.  *Id.*

1       Plaintiff broadly alleges that the ALJ's application of *Chavez* is

2  inappropriate because he has been afflicted with multiple new conditions since the

3  time of that decision and because his impairments should have been categorized as

4  severe. ECF No. 10 at 12. The Court already reviewed these arguments in Part I

5  and will not rehash its analysis here as to why the ALJ's determination was

6  supported by substantial evidence. As such, the Court finds the ALJ's application

7  of *Chavez* was appropriate.

8  **III.   Plaintiff's Symptom Testimony**

9       Plaintiff alleges that the ALJ improperly rejected his subjective symptom

10  testimony based on his activities of daily living. ECF No. 10 at 15-18.

11       The Commissioner undertakes a two-step analysis to determine whether a

12  claimant's subjective symptom testimony can be reasonably accepted as consistent

13  with the objective record evidence. SSR 16-3p, 2016 WL 1119029, at *2. "First,

14  the ALJ must determine whether there is 'objective medical evidence of an

15  underlying impairment which could reasonably be expected to produce the pain or

16  other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*,

17  572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the

18  claimant's] impairment 'could reasonably be expected to cause the severity of the

19  symptom [the claimant] has alleged; [the claimant] need only show that it could

20  reasonably have caused some degree of the symptom.' " *Vasquez*, 572 F.3d at 591

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Even if a plaintiff meets the first prong of the two-step test, the ALJ will only proceed to the second part of the analysis absent evidence of malingering. When affirmative evidence of malingering exists, the ALJ is not required to provide clear and convincing reasons to reject the claimant's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008). Instead, the ALJ may reject the claimant's symptom testimony merely upon identifying some evidence of malingering in the record. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

Assuming that the claimant meets the first prong and lacking record evidence of malingering, the ALJ will proceed to the second step of the test. "[T]he ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.*

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; (5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; (6) any measures other than

treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions

due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record" in determining "how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ rejected Plaintiff's subjective symptom testimony based upon the

objective medical evidence and Plaintiff's own self-reports of improvement.  Tr.

35-36.  The ALJ also expressed concern as to whether Plaintiff was malingering.

*Id.* 36 ("I also note a prominent secondary-gain motivation in the file.").  Plaintiff

does not specifically challenge these findings, but instead limits his focus to the

ALJ's emphasis on his self-activities of daily living.  ECF No. 10 at 15-18.  In the

opinion, the ALJ wrote that Plaintiff's daily activities "continue to be high-

functioning," noting that "he cares for children, cares for pets, cooks meals, dusts,

does laundry, goes outside many times per day, goes out alone, drives, rides [the]

bus, shops in stores" and "had been working on a roof, planning a trip to New

Mexico, camping, swimming, and spending time with family."  *Id.*

1        According to Plaintiff, it was error for the ALJ to rely upon these

2   justifications because they are routine activities which do not easily transfer to the

3   demands of the workplace.  ECF No. 10 at 16-17.  He also claims that some of the

4   symptoms of his fibromyalgia tend to wax and wane, which sometimes allows him

5   to participate in more taxing activities than he otherwise would be able to partake

6   of during a flare-up.  *Id.* at 16.

7        Contradiction with a claimant's activities of daily living is a clear and

8   convincing reason for rejecting a claimant's testimony.  *Tommasetti v. Astrue*, 533

9   F.3d 1035, 1039 (9th Cir. 2008).  There are two circumstances under which an ALJ

10   may rely upon a claimant's daily activities to support an adverse credibility

11   determination: (1) when activities meet the threshold for transferable work skills

12   and (2) when activities contradict a claimant's other testimony.  *Orn v. Astrue*, 495

13   F.3d 625, 639 (9th Cir. 2007).  In order to impact a claimant's credibility, the

14   activity has to be "inconsistent with claimant's claimed limitations."  *Reddick v.*

15   *Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ cannot mischaracterize

16   statements and documents in the record or take these out of context in order to

17   reach his conclusion on the claimant's credibility.  *Id.* at 722-23.  In addition, the

18   claimant's ability to perform limited basic daily activities is not a clear and

19   convincing reason to reject a claimant's testimony.  *See id.* at 722 ("[D]isability

20   claimants should not be penalized for attempting to lead normal lives in the face of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24

their limitations."); *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be utterly incapacitated in order to be disabled.") (internal quotation omitted).

Here, as the ALJ recounted, Plaintiff's daily activities go beyond mere acts of self-care or necessity.  Plaintiff assumed childcare and pet care responsibilities and was able to independently shop, perform chores, and go on other outings.  Tr. 36.  Even if these activities were not transferrable to a work environment, Plaintiff's analysis ignores his participation in more high-functioning, extracurricular engagements, such as working on a roof, planning a vacation, camping, and swimming.  As the ALJ described, these activities do not support Plaintiff's alleged degree of impairment.  *Orn*, 495 F.3d at 639.

Plaintiff's reliance on his fibromyalgia is also misplaced.  Plaintiff argues that his engagement in certain high-level activities is due to the fact that his symptoms of fibromyalgia wax and wane.  ECF No. 10 at 16.  As discussed above in Part I., however, the ALJ appropriately determined that Plaintiff's fibromyalgia had not been formally diagnosed and thus was not a medically determinable impairment.  And even assuming, *arguendo*, that Plaintiff's fibromyalgia was professionally diagnosed, Plaintiff has not explained to this Court how or whether

at all his participation in the activities mentioned above wane during flare-ups of his condition.

Regardless, any error by the ALJ in considering Plaintiff's activities of daily living was harmless because the ALJ relied on other evidence to discredit Plaintiff's reported symptoms, including Plaintiff's own inconsistent admissions of improvement, Tr. 35, the objective medical evidence, and potential malingering, *id.* 36. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is nonprejudicial or inconsequential to the ALJ's ultimate non-disability determination). Plaintiff does not challenge these conclusions. Accordingly, the Court does not find the ALJ erred in disregarding Plaintiff's subjective symptom testimony.

## IV.    Adjustment to Other Work

Plaintiff challenges the ALJ's determination that he could adjust to other work in the national economy, asserting that the ALJ impermissibly relied upon (1) an incomplete RFC which did not account for all of Plaintiffs' severe impairments and (2) an incomplete hypothetical question posed to the VE during the 2015 hearing. ECF No. 10 at 18.

Regarding the RFC, Plaintiff summarily argues that the ALJ excluded evidence of more severe impairments as well as other, newer impairments. *Id.* As discussed in Part I., however, many of Plaintiff's new conditions, such as

fibromyalgia, TBI, and others, do not qualify as medically determinable impairments that the ALJ was required to include in the RFC. *See* Tr. 33. As to Plaintiff's medically determinable impairments, the ALJ made clear that he took those impairments into account when assessing the RFC, despite finding some of those conditions non-severe. *See* Tr. 31-32 ("I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."). Thus, Plaintiff has not shown that the ALJ erred in excluding certain conditions or medically determinable impairments from the RFC. Tr. 35.

Plaintiff's arguments as to the VE hypothetical and testimony are not different in any substantial respect. Plaintiff maintains that the ALJ's reliance on the underlying vocational testimony from 2015 was improper because the hypothetical posed to the VE in the initial case did not encompass all of his current limitations. ECF No. 10 at 18. Specifically, Plaintiff contends that the ALJ erred "in adopting the vocational testimony from 2015 with all the conditions that are now severe impairment[s]." *Id.*

A hypothetical posed to a qualifying VE does not need to include all of a claimant's asserted impairments. *Hahn v. Berryhill*, 722 F. App'x 602, 603-4 (9th Cir. 2017). Rather, the hypothetical only needs to include those "limitations [which] the ALJ found to be credible and supported by substantial evidence." *Id.*

at 604.  As discussed, the ALJ's findings regarding Plaintiff's functional

limitations and credibility determinations were supported by substantial evidence

in the record and aligned with the underlying determination of the Commissioner

from 2015.  Therefore, the ALJ's failure to pose a hypothetical to a different VE on

the basis of Plaintiff's newly asserted or worsened impairments was not an error

requiring reversal.

**V.    Longitudinal Evaluation**

Plaintiff's final challenge submits that the ALJ failed to consider his

fibromyalgia and mental health conditions in a longitudinal fashion.  ECF No. 10

at 19.

Plaintiff does not explain how the ALJ failed to consider the longitudinal

record or specify what evidence contained in the longitudinal record was

overlooked by the ALJ.  Therefore, Plaintiff's challenge is actually an argument to

reinterpret the evidence in his favor.  The Court will not reverse the ALJ's decision

based on Plaintiff's disagreement with the ALJ's interpretation of the record or

supplement arguments on his behalf.  *See Tommasetti*, 533 F.3d at 1038.  To the

contrary, as Defendant observes, the ALJ explicitly stated that his opinions were

informed by the longitudinal record or entire record.  *See* Tr. 31 (noting he

"careful[ly] consider[ed] the entire record"), 35 (same), 37 (considering mental

status exams "in the longitudinal record"), 38 (finding the opinions of WSU

psychology staff to be inconsistent with the longitudinal record). Accordingly, the ALJ did not err by failing to conduct a longitudinal review of the record.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 10) is **DENIED**. Defendant's cross motion (ECF No. 14) is **GRANTED**.

2. Summary Judgment is granted in favor of Defendant.

The District Court Executive is directed to enter this Order and Judgment, furnish copies to counsel, and **CLOSE** the file.

DATED January 16, 2024.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 29